May it please the court, Alex Chen on behalf of the petitioner Juan Carlos Barrera-Lima. The petitioner is asking the court to find that the indecent exposure conviction that he received under the Washington State indecent exposure statute is not categorically a crime involving moral turpitude. The minimum conduct that could be prosecuted under this statute would cover conduct that is broader than the kind of covered under the generic definition of a crime involving moral turpitude. The basis for petitioner's argument is that this court in Nunes set forth a test for non-fraudulent, for determining when non-fraudulent crimes would be considered a crime involving moral turpitude categorically. And it was a three-part standard that the court looked at. The first part was whether or not the statute included an intent to hurt a victim. The second part was whether or not the statute included an infliction of harm on a victim. And the third part is whether or not the actions covered under the statute affected a particular class of victims. So there's language in Nunes to that, which you're just alluding to right there. But the BIA later came out with opinion in Cortez Medina. Correct. Which said, we think the Ninth Circuit was, language is too narrow. Right? The Board of Immigration Appeals did find such in Cortez Medina. In Cortez Medina, the BIA held that crime of indecent exposure is categorically a crime involving moral turpitude. What do we do with what they said in Cortez Medina? Well, under administrative law principles. Well, this court's not required. The petitioner's position is that the court's not required to provide the decision in Cortez Medina with Chevron deference because the agency's interpretation and construction of the statute is not reasonable enough to be permissible. The reason why the petitioner's making an argument is that the Cortez Medina decision basically held that a defendant who was convicted under an indecent exposure statute would have to hold a lewd intent. The lewd intent that the defendant would have to have would have to include an intent for one's own sexual desires. Now, the statute at issue in the Nunez case and in the Cortez Medina case concerned California Penal Code Section 314. And the case law that was cited in the Nunez case indicated that California courts interpreted the lewd intent that an accused party had to have to be convicted as extending also to the intent to arouse the sexual gratification of a viewer or offending the viewer in a sexual way. So the Nunez court interpreted the statute to not just apply to situations where the accused party had a lewd intent for one's own sexual desires. You could also be convicted under this statute if your intent was not for your own sexual desire but also for the sexual gratification of a viewer or for offending the other party. And the examples that were provided was the example of somebody who conducted nude dancing in a bar could be convicted under the California statute at issue. A prankster could be convicted under the California statute at issue. For example, there was a driver who exposed his penis in a road rage incident. That driver arguably didn't have any intent to arouse his own sexual desires. His intent would have been to offend the other party. There was an example provided of a 12-year-old who pulled down his pants to expose himself to other classmates. Those are examples provided of situations where somebody could be convicted under the California statute but it would go beyond the definition of the lewd intent that was understood in the Cortez Medina case. The petitioner argued that the ruling arrived at in the Cortez Medina case is not entitled to Chevron deference even if we are to consider the Brand X application of that case to the situation at hand. And that's because Cortez Medina basically disregards the holding in Nunez on the point you're making. Yes, because it's clear that the agency is dealing with a statute that is unclear. And the statute that is unclear would be what is a crime involving moral interpretive. It's always been a vague and nebulous concept. There's a general definition that it covers conduct that's considered vile, base, and depraved. But an exact and precise definition has escaped nearly every court that's reviewed the issue. But where the board erred is in terms of its understanding of California law and that their interpretation, its interpretation of California law is erroneous and it would not be entitled to Chevron deference from the petitioner's perspective. So then where does that get you for purposes of the Washington statute? Where that gets us for the purposes of the Washington statute is that the Washington statute is similar to the California statute that this Court found to not. Well, the Washington, if I remember correctly, the Washington statute doesn't have the word lewd in it. It does not, and that is something that would work in the petitioner's favor. But the Washington statute that at least we're dealing with, as I understand, the record's a little, there's some confusion in the record, but as I understand it, the provision under the Washington statute that he was convicted under was the gross misdemeanor because it happened in front of a person under 14 years of age, correct? That's correct. So that's a little bit different than the California statute. Not in terms of the substance for what he had to be accused of committing. The Washington statute does, if someone is convicted under the part of the Washington statute where someone's accused of exposing himself or herself to a party under 14 years of age, the conduct isn't any different. That just relates to the age of the alleged victim. So the same conduct that, there's not any less conduct required to be convicted under that specific portion of the Washington statute. Well, except for one of the points you started out with was what we'd said in Nunez about what is a crime of moral turpitude. Right, and I don't think . . . It made reference, if I'm not mistaken, to a protective class. Sure, sure, and that's one part of the test that the Nunez court looks at to determine whether or not a conviction under a certain statute constitutes a category, constitutes a crime involving moral turpitude. And regarding the issue of a protected class, I think the court should look at the Washington statute in this fashion. Somebody who has been convicted twice of indecent exposure would be subject to a felony conviction under the Washington State Indecent Exposure Statute. So somebody who has indecently exposed himself or herself to two parties who are over, let's say to victims on separate occasions who are over 18 years of age, that person would be subject to a greater sanction than somebody who just exposed himself or herself one time to somebody who is under 14 years of age. So it's not clear that somebody who is under 14 years of age is necessarily a protected party in this case. What do you do with the fact that the legislature said that if the person is under 14 years of age, it's a gross misdemeanor? What's the difference between a gross misdemeanor and a regular misdemeanor? The difference between a gross misdemeanor and a regular misdemeanor in Washington State is that a defendant convicted of the former is subject to greater sanctions. A person who is convicted under the former is subject to a maximum sentence of a year in jail while someone who is convicted of the latter is subject to a maximum of 90 days in jail. A regular misdemeanor? A regular, a simple misdemeanor. Simple misdemeanor. Yes, yes. But somebody who is convicted of a felony offense is obviously subject to more significant sanctions than somebody who is convicted of a gross misdemeanor. So I don't think that point is significant enough to establish that children under 14 years of age are a protected class in this case or as applied to this statute because as Petitioner noted in his brief, somebody who has been convicted two times of indecent exposure to parties over 14 years, regardless of the age of the party, is subject to a greater sanction. Overall, the Petitioner is contending that there is a realistic possibility that somebody could be convicted under the Washington State statute for which he was convicted for conduct that does not involve moral turpitude and we think that the examples that this court cited in the Nunes case would also apply to the Washington State statute as well. This court did ask both parties to be prepared to discuss the issue of whether remand was appropriate and the Petitioner would agree that remand is appropriate in this case. Well, the government just asked for a remand and cited two cases. Sure. And I read those cases. I'm going to ask the government how those cases played into their motion because I couldn't quite figure it out. It was not obvious to me when I read those two cases. Well, the Petitioner doesn't oppose the motion of remand. I don't want to speak for the respondent, but I do think Valdivia Flores, one of the cases that the government cited in its motion, does raise the question as to whether any Washington State statute could constitute categorical matches for their federal counterparts and I think the Jimenez-Cedillo case, the BIA case that was cited in the government's motion would require the BIA to conduct an analysis to whether the indecent exposure statute that we're talking about in this case was created with the intention of protecting minors. I think that was one of the key findings from the Jimenez-Cedillo BIA case. So when you say the case should be remanded, do you mean the case should be remanded if we decide the case or we should remand it without deciding it? I think the court should remand this case without deciding it. Without deciding it? Okay. I would like to reserve the final two minutes of my time. That's fine. Your time is reserved. We'll hear from Mr. Lawrence for the government. Thank you, Your Honor. May it please the Court. Victor Lawrence on behalf of the Attorney General. This court asked whether or not how Cortez Medina plays into this particular case and we would say that when the court decided Nunes, the Ninth Circuit decided Nunes in 2010, it indicated that it was important for the board to clarify when criminal conduct involving indecent exposure is properly classified as a crime involving moral turpitude. So in 2013, when the board had the case in Cortez Medina, it did exactly that. It looked at what is a crime involving moral turpitude. As you know, this is an ambiguous term, but the board, using its immigration expertise, had the ability to interpret that and provide a precedential decision, which we agree or we believe this court should defer to. So the first thing they did in Cortez Medina is the board said, what is a crime involving moral turpitude? It basically has two essential elements, a culpable mental state and reprehensible conduct. But then it looked at its wealth of case law, prior president board decisions on moral turpitude in this grounds to see what else they have said and what common factors they could find among courts that have agreed that crimes are crimes involving moral turpitude. And they came up with two essential elements that a statute must have and that's with respect to indecent exposure, they have to have an obscene exposure of their person and they have to have lewd intent. So the next thing that the board did, and that's the important takeaway from Cortez Medina, that there are two essential elements that a statute must have in order to find a conviction that is categorically a crime involving moral turpitude, indecent exposure and lewd intent. It got the lewd intent from the California statute, isn't that right? The California intent doesn't say lewd intent. But it starts off lewdly. But they're talking about the lewd exposure. Right, but that seems to have been where the board derived the term lewd. No, I don't think so, Your Honor. I think the board in Cortez Medina looked at all the various times where there was conviction for a crime involving moral turpitude involving indecent exposure and determined that the common factor was that there had to be lewd intent. And that's why they considered that as an essential element of the crime. Then how did they define lewd intent? It can be ambiguous as well. Well, so that's where this board that looked at the decision in Mr. Barrera-Lima's case, looked at so if you start with accepting the fact that in Cortez Medina these are the two essential elements they found, lewd intent and indecent exposure, then you go to the Washington statute and you see whether or not that statute has those two elements. If so, then categorically anybody convicted under that statute has committed a crime involving moral turpitude. And when you look at the Washington statute, it says that a person who is guilty of indecent exposure, he makes an open and obscene exposure of his person, knowing that such conduct, knowing that that obscene exposure is likely to cause reasonable affront or alarm. And the board in Mr. Barrera-Lima's case reasonably determined that that statute requires lewd intent. So therefore anybody convicted under this statute necessarily has been convicted of a crime involving moral turpitude. How have the Washington courts interpreted that statute? So let me back up one question further. So as I understand Nunez, we excluded sexual affront or sexual as a basis for finding an indecent exposure offense as a CMIT, correct? Yeah. I mean, we were talking about the three Mr. Chan raises, the attempt to injure, actual injury, and potential class of victims. They looked at those kind of broad categories. But Cortez Medina took a different approach. It took a different approach. But we foreclosed the possibility. Didn't we foreclose the possibility in Nunez that it can't be sexual, sexual motivation? Well, you did with respect. In Nunez, you were looking specifically at the California statute. But as far as a generic definition of what a crime involving moral turpitude is, that was not foreclosed in any way. More accurately, the court in Nunez said that the board should clarify what are the essential elements of indecent exposure with respect to it being a crime involving moral turpitude. So that's exactly what the board did. I feel like we were pretty clear about if it's a sexual, you know, the way with respect to the California statute, we pretty much said, as I understand Nunez, that sexual affront or sexual, the other elements of it, can't be a basis for a CMIT, period. And it looks like, when it looks like happening, you came in the back door here and now you're trying to use that same basis as a basis for treating this Washington statute as a crime of moral turpitude. I think, respectfully, I think you're overcharacterizing what Nunez did. I don't think it said that you can never have a sexual intent, especially with respect to an indecent exposure, that you can never have a sexual intent when you commit that crime. I don't think it was saying that at all. But more importantly, what Nunez was doing, this is, I think, the thrust of the government's argument about why you should accord Chevron deference to the board's decision, is the court in Nunez specifically put it in front of the board and said, please, please, we need clarification on this. We need clarification on what is a CIMT with respect to indecent exposure. So that's what the court, what the board did when it got the case in Medina. And it came up, whereas the court in Nunez was only looking at Ninth Circuit law, because it didn't have a body of law to look at generally with respect to crime involving moral turpitude. It looked at its own case law and tried to come up with categories. That's where it came up with these categories of attempt to injure, actual injury, and to protect a class. The board took a different approach and said, let's look at the generic law generally of what is a crime involving moral turpitude. Let's look at our own precedent around the country to get a generic definition. What are the elements that are common with respect to indecent exposure and a crime involving moral turpitude? And that's where they came up with lewd intent and obscene exposure. But, counsel? Yes. You said something about a statute can't have intent to, under Nunez, can't have intent to sexually offend or affront. I think Nunez said the statute can't have only that. And so I take it you're saying, okay, it does have the lewd intent, but it has something more. And you say it's obscene behavior? An obscene exposure and lewd intent, but also the Washington statute, very importantly, indicates, and what Mr. Barrera-Lima was convicted of, was the gross misdemeanor offense that he exposed himself in front of somebody who was under the age of 14. You're picking up the protected class? Well, in response to Judge Paz's questions about that, yes, you could argue under Nunez that that is a protected class, but we're actually taking a different argument. We're arguing on the basis of Medina, which we think this Court should accord Chevron deference to, that if you look at this Washington statute, you find both lewd intent, you find obscene exposure, and when you look at the statute as a whole, what possible crime could there be where somebody is convicted of this, exposing themselves in front of a 14-year-old, or less than a 14-year-old, excuse me, and have it not be lewd intent? And, you know, the important thing that the Supreme Court has also said in Duana Salveres is it's the petitioner's responsibility to show that there's a reasonable probability, not just a theoretical possibility, but a reasonable probability that somebody in the state of Washington would be convicted under this statute that would not have those elements of lewd intent and obscene exposure. And the government maintains that he hasn't met his burden in showing any case in the state of Washington where there hasn't been those elements present. And the government maintains that given the fact that this, Mr. Barrera Lima, was convicted of the second part of the statute of somebody exposing himself in front of somebody who was under 14, that there's no possible way, and that's not necessarily the burden, but there's no possible way that somebody would be convicted under the statute that didn't have those essential elements of lewd intent and obscene exposure. Mr. Lawrence, let me ask you this. How do you answer Mr. Chan's argument that someone might expose themselves in a road rage incident and not have any lewd intent, but rather attempt to annoy? Other than the fact that they may be accused of reckless driving if they're trying to get their penis up above the window. Yeah, I'm not sure how that exactly happens in real practice, but in any event, to answer your question, Judge Gould, in Nunez, the California court was looking at the wealth of cases in California where people were convicted under that statute or people were prosecuted under that statute. And they found that there were these couple of instances of the road rage incident, the nude dancing incident, where those were not cases that necessarily involved lewd intent. But the difference, Your Honor, is we're operating, of course, looking at the Washington statute and the case law that's developed in the state of Washington. Pursuant to Duenas-Alvarez, it's petitioner's responsibility or burden to show that there's a reasonable probability that somebody will be convicted of one of those crimes, a type of crime that you just mentioned, that they'll be convicted of that in this state. But he hasn't shown a single case of anybody that's been prosecuted, even prosecuted, let alone convicted of the crime of indecent exposure for this type of road rage incident or the prank incident or nude dancing. So those instances came out of California state law that the Ninth Circuit used as examples in supporting their opinion in Nunez. But here, we're looking at a Washington statute in the state of Washington. My opponent has to show that there's a reasonable probability that somebody will be convicted under this statute that would not have a lewd intent or commit an obscene exposure and be convicted under this indecent exposure statute, particularly one where it is... Does the Washington statute require an actual observation? Well, let's see. A person is guilty of indecent exposure if he or she intentionally makes any open and obscene exposure of this person knowing that such conduct... No, I would say actual observation is not required by the terms of the statute. I don't think it makes a difference. Why doesn't that undermine your argument? It doesn't at all because he's still making an obscene exposure. You have two elements. How do you define obscene? Lascivious, indecent. Sexual? Could be. Washington state requires sexual motivation. That is the case law. The main case law that we have is state versus vars from the Supreme Court of Washington. And that did not require necessarily sexual motivation. It involved somebody who was going around neighborhoods naked and exposing his genitalia. But there's still enough in that opinion to develop the intent that he's... to develop the understanding that he was doing that with lewd intent. And there's discussion in the vars' opinion about lascivious behavior. So the overall point that the government is resting on here is that there's no... The petitioner hasn't shown any reasonable probability that somebody could be convicted under this statute. But there's not even an example of a case in the state of Washington where somebody has been convicted of this statute that you could argue did not involve those two elements of lewd intent and obscene exposure. Let me ask you this. Because your time is running out and I want you to... So you filed a motion to remand. Correct. And you said the board should consider these two cases. I forget the name. Valdivia and Jimenez. And I read them when your motion came across. And I was just trying to figure out what you wanted... I know you weren't sending it to me personally, but what was the takeaway from those two cases? Sure. Well, in Valdivia, as Mr. Chan also noted, there's some language in the opinion that seems to indicate that any crime in the state of Washington also... You have to look at the accomplice liability factor because somebody could be convicted as an accomplice under any particular crime in the state of Washington. And I was looking at the generic definition of accomplice as compared to the state definition of accomplice. And it said that the state definition was broader because it only required knowledge, whereas the federal generic definition required specific intent. So the idea was that because it was broader, arguably any crime in the state of Washington would be tough to say it's categorically a crime or in that case it was an aggravated felony. That's categorically an aggravated felony because the state statute was broader than the federal generic definition with respect to accomplice liability. So this was a very... But this case doesn't have an accomplice in it. I agree. You're just looking out for the broader interest of all potential accomplices out there or something? Well, we were acknowledging the fact that there wasn't an accomplice in the Valdivia case either. But the court's decision in Valdivia basically said that because somebody can be charged under the same statute as an accomplice, and because the federal generic definition of accomplice is more narrow than the state definition, then it's not necessarily a categorical crime. Then would that get you to whether or not it's divisible? No, we're not even getting to divisible. That's ultimately what you get to, isn't it? Don't you then have to look at each statute and say, is it divisible? If it's not a categorical crime, then you have to go to a modified categorical approach and look at whether the statute's divisible. But here, the only reason why we raised Valdivia and suggested this remand, which if the court were to decide this on the merits and say, look, this is obviously a categorical crime involving moral turpitude because nobody can be convicted under this statute without having done something morally turpitudinous, the government would be pleased with that decision and would think it's correct. We suggested the possibility that if this court is looking at this from the standpoint of Valdivia and the accomplice liability statute, that rather than making a decision in the first instance on whether or not Valdivia has an impact on this particular case, it should send it back to the board to do so. So that's the reason why we filed the remand. And also the matter of Jimenez's case, we just suggested that there's another way to look at this, another approach that the board could take, and that goes more to the protected class of victims that we discussed earlier. So we filed the remand motion suggesting that if the court is looking at this from that standpoint, like as it did in Valdivia, then it should send it to the board to look at this in the first instance. But there's several distinguishing factors between Valdivia and the case here, because Valdivia was a criminal case, this is a civil case, Valdivia involved an aggravated felony, this involves a crime involving moral turpitude, and Valdivia involved a felony, and this is a misdemeanor case. So we think it's certainly within reason that the court can conclude that Valdivia doesn't apply and look at the statute itself and say, look, there's no possible crime, petitioner has not shown a reasonable probability that there's any convictions or crimes that are being prosecuted in the state of Washington that involve behavior that does not involve lewd intent and obscene exposure, and determine that indeed this is a categorical crime involving moral turpitude and deny the petition for review. We think that's a reasonable result, and that's what we would ask the court to do if it doesn't remand on the Valdivia issue. Okay. Great. Okay. Thank you very much, Mr. Lawrence. Thank you very much. Mr. Chen, we had Mr. Lawrence went over time a bit on our questioning, so if you want to add rebuttal now, I think you had some time left, didn't you? I think I did. But you may not need it. It's up to you. I just wanted to address one brief point since the court did ask both parties to be prepared to answer the question as to whether or not the board even applied Cortez and Medina correctly to this case, and the petitioner's position is that even if you do grant Chevron deference to the Cortez and Medina case, that it was not applied correctly to this case, and the reason is that the board defined lewd intent in this case as including all obscene and pretty much as applying to all obscene or indecent acts. However, the definition that was provided of lewd or lewd intent in Cortez and Medina is much more narrow. The petitioner's understanding of the definition provided of lewd intent in Cortez and Medina is that there would be some type of sexual arousal or gratification required on the part of the party who is accused of indecent exposure. So the petitioner will also contend that even if this court does grant Chevron deference to Cortez and Medina, that Cortez and Medina was not applied correctly to this case. Great. Okay, thank you. Let me just say this. Before we adjourn, I want to again thank both counsel for the excellent arguments. The case poses a lot of difficult issues, and both of you have helped us out a great deal. Further, I must thank counsel Lawrence for traveling all the way from Washington, D.C., to give us the benefit of his knowledge, and I'm also going to thank Mr. Chant for traveling all the way from Bellevue, which with our current traffic is also a problem. So thank you both, and the court will decide on the motion and the case which is now submitted. So we will submit this case, and we will adjourn for a ten-minute recess, after which we have two cases to be argued, Elie and Flaherty, and the Wynn case is on the briefs.
judges: Fisher, Gould, Paez